**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

Gary Laverty,

                          Plaintiff,

              -against-

Dobco, Inc,

                          Defendant.
--------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____   3/6/2024   ___
DATE FILED: _____

7:21-CV-2592 (VR)

<u>**OPINION & ORDER**</u>

**VICTORIA REZNIK, United States Magistrate Judge:**

Plaintiff Gary Laverty sues Defendant Dobco, Inc., seeking to recover damages for injuries sustained after falling from a ladder while performing demolition work.  The parties' cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure are pending before the Court.  On July 9, 2021, the parties consented to jurisdiction before a magistrate judge for all purposes, pursuant to 28 U.S.C. § 636(c).  (ECF No. 23).

Laverty moves for summary judgment on his New York Labor Law § 240(1) claim.  (ECF No. 87).  Dobco cross-moves for summary judgment on Laverty's claims under New York Labor Law §§ 200, 240(1), and 241(6).  (ECF No. 91).  For the reasons stated below, Laverty's motion and Dobco's cross-motion for summary judgment on Laverty's § 240(1) claim are **DENIED**.  Dobco's motion for summary judgment on Laverty's §§ 200 and 241(6) claims is **GRANTED**.

I.      FACTUAL BACKGROUND[1]

Laverty worked for J.R. Contracting and Environmental Consulting Inc., as a demolition laborer.  (ECF Nos. 88 at ¶ 9; 90 at ¶ 29).[2]  Dobco had been retained by the U.S. Army Corps of Engineers to provide construction work at the West Point Military Academy.  (ECF Nos. 88 at ¶¶ 47–48; 90 at ¶ 25).  Dobco subcontracted J.R. to provide demolition work under the prime contract.  (ECF Nos. 88 at ¶¶ 48–49; 90 at ¶ 26).  Dobco retained Dannick Inc. to serve as the safety consultant on the construction project.[3]  (ECF Nos. 88 at ¶ 50; 90 at ¶ 28).

Laverty had more than 25 years of experience as a construction laborer in various capacities.[4]  (ECF Nos. 88 at ¶¶ 1–9; 90 at ¶ 30).  In 2017 or 2018,[5] Laverty joined J.R. as a demolition laborer at West Point.  (ECF Nos. 88 at ¶ 9; 90 at ¶ 30).  At first, he was assigned to a building known as Pershing Hall, where his duties included elevated pipe cutting while on an A-

---

[1] The following facts are drawn from each of the parties' Rule 56.1 Statements of Material Facts (ECF Nos. 88 (Laverty's Rule 56.1 Statement); 90 at ¶¶ 25–41 (Dobco's Rule 56.1 Statement), Rule 56.1 Counterstatements of Material Facts (ECF Nos. 96 (Dobco's Rule 56.1 Counterstatement), 94 (Laverty's Rule 56.1 Counterstatement)), and the parties' supporting submissions.  These facts are undisputed unless otherwise noted.  The Court has not considered ECF No. 95 because it does not comply with S.D.N.Y. Local Rule 56.1(b), which requires that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party."

[2] Citations to the parties Local Rule 56.1 Statements refer to the parties' numbered paragraphs.  Unless otherwise noted, all other citations refer to ECF pagination.

[3] Dannick prepared an Activity Hazard Analysis (AHA) (a document that evaluates the scope of work and the associated hazards) on March 2, 2020, which stated that to eliminate or minimize hazards, personnel should use "[p]roper PPE, hard hat, safety glasses, gloves, etc., keep aisles and egress clear, proper ventilation, follow WPFD hot work procedures, fire watch."  (ECF No. 86-9 at 2 (cleaned up)).  In response to Laverty's fall, Dannick prepared a revised AHA, stating that personnel should "[p]rovide support for pipe being demolished (to include over head) with additional persons, pipe stand or equipment (Bobcat bucket to support)."  (ECF No. 86-10 at 2 (cleaned up)).  Laverty includes paraphrasing of the AHA in his Rule 56.1 statement.  (*See* ECF No. 88 at ¶¶ 50–57).  Dobco disputes Laverty's statements concerning the AHA as misinterpretations or "self-serving interpretation[s]" of a document that "is up to the trier of fact" to interpret.  (ECF No. 96 at ¶¶ 51–57).  This Court does not sit as a "trier of fact" on summary judgment.  However, the Court perceives no dispute of material fact as to the AHA.

[4] In 1995, Laverty became a member of Local Union 60, where he performed bridge work, roadwork, paving, bridge demolition, and bridge reconstruction.  (ECF Nos. 88 at ¶¶ 2–3; 90 at ¶ 30).  In 1997, Laverty joined Local Union 79, where he was trained on dismantling elevated pipes and ladder use.  (ECF Nos. 88 at ¶ 4; 90 at ¶ 30).  In 2015, Laverty joined Local Union 17, where he continued to engage in pipe demolition.  (ECF Nos. 88 at ¶¶ 1, 7–8; 90 at ¶ 30).

[5] Laverty's Rule 56.1 Statement states that Laverty joined J.R. in 2017 (ECF No. 88 at ¶ 9), while Dobco's Rule 56.1 Statement states that Laverty joined J.R. in 2018 (ECF No. 90 at ¶ 31).

Frame ladder.  (ECF No. 90 at ¶ 31).  His supervisor was Davor Stojanovic.[6]  (ECF Nos. 88 at ¶ 10; 90 at ¶¶ 32, 34).  In early 2020,[7] Laverty moved on to the Bradley Barracks, where he continued demolition work involving pipe cutting with a torch.  (ECF Nos. 88 at ¶¶ 14, 19–27, 46; 90 at ¶ 32).

Every morning, Laverty would check in with Stojanovic, who would provide verbal, project-related instructions.  (ECF Nos. 88 at ¶ 15; 90 at ¶ 32).  The parties appear to disagree, however, about the specificity of Stojanovic's instructions.[8]  Laverty asserts that Stojanovic did not provide "specific instructions on how to accomplish his job."  (ECF No. 88 at ¶ 45).  Dobco disagrees and writes that "Stojanovic provided instruction on the proper means and methods of performing the torch demolition safely, prior to the accident, where he reminded [Laverty] of procedure, of the availability of equipment, of the availability of additional help, and to not rush."  (ECF Nos. 96 at ¶ 45; 90 at ¶ 35).  Laverty disputes this statement, saying that "Stojanovic did not provide [Laverty] with the 'means and methods' for the demolition of steam pipe using a torch to cut the pipe out of the ceiling and there was no discussion with [Laverty] as to how he was to do that safely."  (ECF No. 94 at 5).[9]  At bottom, the parties have differing interpretations of various portions of Stojanovic's testimony, about which reasonable minds could disagree.

---

[6] Stojanovic was also known as Dave Stojanovic.  (ECF No. 88 at ¶ 10).  Dobco disputes Laverty's statement that he was "directed by Dave" (*id.* at ¶ 23), as "vague" because "'Dave' did not monitor and instruct [Laverty] at every moment [Laverty] was working" (ECF No. 96 at ¶ 23).  However, these purported disputes are immaterial because Laverty does not assert that Stojanovic monitored Laverty "at every moment."  (*Id.*).  And in any case, it is undisputed that Stojanovic was Laverty's supervisor.  (*See* ECF Nos. 88 at ¶ 10; 90 at ¶¶ 32, 34).

[7] Laverty's Rule 56.1 Statement provides that the work at the Bradley Barracks started in March 2020 or one month before the accident.  (ECF No. 88 at ¶¶ 14, 46).  Dobco's Rule 56.1 Statement provides that Laverty's work at the Bradley Barracks started in around January 2020.  (ECF No. 90 at ¶ 32).  However, each party's statement provides that Laverty had been working at the Bradley Barracks for approximately one month before the accident, which occurred on April 6, 2020.  (ECF Nos. 88 at ¶¶ 14, 29, 46; 90 at ¶¶ 25, 33).

[8] For the reasons explained below, the parties' dispute about the nature of Stojanovic's instructions is a disputed material fact.

[9] Citations to ECF No. 94 refer to ECF pagination.

Stojanovic and/or J.R. provided personal protective equipment.[10]  (ECF Nos. 88 at ¶¶ 16, 27; 90 at ¶¶ 32, 34, 53).  Other equipment, including A-Frame ladders[11] and safety equipment, were stored in a room located on the first floor of the Bradley Barracks next to Stojanovic's office.  (ECF Nos. 88 at ¶ 17; 90 at ¶¶ 32, 34).  The parties dispute whether other devices, such as Bobcats, were made available to Laverty.  Laverty writes that "[n]o other type of devices— scaffold or scissor lift—was made available to [him]."  (ECF No. 88 at ¶ 13).  Dobco, on the other hand, writes that J.R. provided four or five Bobcats/scissor lifts, which were operated by five individuals.  (ECF Nos. 90 at ¶¶ 32, 34–35, 37; 96 at ¶¶ 13, 16).

On April 6, 2020, Stojanovic directed Laverty to finish the pipe demolition at the Bradley Barracks basement.  (ECF Nos. 88 at ¶ 29; 90 at ¶ 33).  Laverty, on his own, set up in the basement with a 6-foot A-Frame ladder, his torch assembly, a fire extinguisher, and his personal protective equipment.  (ECF Nos. 88 at ¶ 30; 90 at ¶ 33).  Laverty inspected the ladder before use and determined that it was free of defects.  (ECF No. 90 at ¶ 33).  At about 9:00 AM, Laverty completed work in the room next to the room where the accident occurred.  (ECF Nos. 88 at ¶ 31; 90 at ¶ 33).  Laverty then moved to the final room slated for pipe demolition.  (ECF Nos. 88 at ¶¶ 28, 31; 90 at ¶ 33).

Before the accident, Laverty asserts that first, he would cut the "hangers" that supported

---

[10] Such equipment included burning gloves, a burning jacket, burning glasses, a hard hat, a full-face respirator, and a set of ear plugs.  (ECF No. 88 at ¶ 16).  Dobco disputes Laverty's phrasing that such equipment had been provided by JR Contracting, because Laverty testified that "the equipment he was using on the date of the accident was provided by JR Contracting."  (ECF No. 96 at ¶ 27).  However, whether the equipment was always provided by JR Contracting or had been provided by JR Contracting on the date of the accident is not material.

[11] Laverty writes that he was "given" an A-Frame ladder.  (ECF No. 88 at ¶¶ 12).  Dobco disputes that Laverty was "given" an A-Frame ladder as an inaccurate paraphrase of Laverty's testimony about the types of ladders supplied to him and the ladders he would use.  (ECF No. 96 at ¶ 12).  However, this potential factual dispute is not material because whether the ladder was "given" to Laverty, rather than supplied to him, is not material to whether Laverty was provided proper protection from the inherent effects of gravity.

the 1.5-inch sprinkler pipe to the ceiling.[12]  (ECF No. 88 at ¶¶ 20, 22, 34).  Next, he would

"drop" the 1.5-inch pipe.  (*Id.* at ¶¶ 20, 22, 34).  He would then cut the hangers for the 3-inch

pipe and drop that pipe.  (*Id.* at ¶¶ 21–22, 35).  Finally, he would proceed to cut the 8-inch pipe.

(*Id.* at ¶¶ 21–22, 35).  According to Dobco, Stojanovic testified that he "never witnessed

[Laverty] engaged in the practice of cutting elevated pipe and allowing the same to free fall to

the floor and had he seen such a practice he would've stopped the same."  (ECF No. 90 at ¶ 36).

Joanne Reilly, who served as Dannick's Safety Health Officer at the Bradley Barracks, testified

that she was authorized to, and sometimes did, stop work of J&R employees over safety

concerns, but never stopped Laverty from working due to a safety concern.  (*Id.* at ¶¶ 38, 43;

ECF No. 94 at 6).

     The parties dispute whether Laverty generally had assistance with his demolition work.[13]

According to Laverty, he testified that he "never had a 'helper' or 'a partner' or anyone 'to assist

him with his work."  (ECF No. 88 at ¶ 32).  According to Dobco, Laverty "not only had help on

the date of the accident but [also had help] on numerous prior occasions" because Laverty had

two or three Bobcats with operators available to him, in the basement, at all times, to help him

support and lower pipes.  (ECF Nos. 90 at ¶ 33; 96 at ¶ 32).  According to Dobco, Laverty

testified that on one occasion, Brett Sasso, a Bobcat operator, supported a valve located near the

ceiling in a hallway while Laverty cut an attached ceiling level pipe in an adjacent room,

allowing the valve to be lowered and removed by Sasso.  (ECF No. 90 at ¶ 33).  Also, according

to Dobco, Sasso testified that earlier in the project, he had operated Bobcats to support elevated

---

[12] Dobco disputes Laverty's paraphrasing of his testimony concerning the various dimensions of the pipes, whether Laverty "always" cut the pipes in the same way, and whether he cut the pipes in that particular order on the date of the accident.  (ECF No. 96 at ¶¶ 19, 22, 34–35).  But these potential factual disputes are immaterial to the issues on summary judgment.

[13] For the reasons explained below, the parties' dispute over whether Bobcats were made available to Laverty is a disputed material fact.

pipes that were being cut down, and though he "did not specifically recall instances of securing pipe for [Laverty] with a Bobcat at any time before the accident," such practice "was common place" on the project. (ECF No. 90 at ¶ 37). Additionally, according to Dobco, Stojanovic testified that "there were two or three Bobcats available at all times in the basement for [Laverty's] use" to "support a pipe and lower the pipe down." (*Id.* at ¶ 35). But according to Laverty, he had testified that Sasso and the Bobcat had assisted him "only on one occasion" in order to lower a 500-pound valve, but Sasso had never assisted him by supporting a pipe that he was cutting. (ECF No. 94 at 2). Laverty does not appear to dispute that there were Bobcats and Bobcat operators available in the Bradley basement. (*Id.* at 4–5).

According to Dobco, at the time of the accident, Laverty knew that there was at least one Bobcat, operated by Sasso, present in the Bradley basement. (ECF No. 90 at ¶¶ 33, 37). Sasso, who was demolishing cinderblocks, was located about 60 feet away from Laverty. (*Id.* at ¶ 37). A second Bobcat operator, who was engaged in removing debris, was also present in the basement. (*Id.*). Before the accident, Laverty did not request any support from the Bobcat operators. (ECF Nos. 90 at ¶¶ 33, 37; 94 at 2). Laverty, however, disputes any insinuation that he "was under an obligation to request the bobcat for overhead pipe cutting or that [Dobco] had an expectation that he should do so." (ECF No. 94 at 2–3). According to Laverty, he testified generally that he was "never told" that "he was required to use the Bobcat when cutting pipe," nor was he "ever instruct[ed]" that "he was expected to get a laborer with a [B]obcat when he was cutting [a] pipe." (*Id.*).

Laverty testified that at the time of the accident, he was alone in the room and standing on the third or fourth rung of a six-foot A-frame ladder that had five steps. (ECF No. 88 at ¶¶ 36, 43, 58–59). He was cutting an 8-inch pipe, with about two inches of pipe left to cut, when

the pipe "swung down," striking the ladder on the side, and causing him to be "flipped" off the ladder.  (*Id.* at ¶¶ 36–40, 59).  He landed, face down, on the concrete.  (*Id.* at ¶ 42).  He suffered extreme pain and lost consciousness.  (*Id.* at ¶¶ 41–42).  After the fall, he observed that the ladder had been knocked to the ground by the pipe that had struck it.  (*Id.* at ¶ 33).  Dobco disputes Laverty's statements that he fell from a ladder and lost consciousness, citing a medical record excerpt from the hospital emergency room visit, in which Laverty described the incident without mentioning his fall and denied losing consciousness.[14]  (ECF No. 96 at ¶¶ 33, 36–37, 39–42, 58–59; *see* ECF No. 93-1 at 2).

## II.     PROCEDURAL HISTORY

In March 2021, Laverty commenced this action.  (ECF No. 2).  In July 2021, the parties consented to jurisdiction before a magistrate judge and this action was referred to the Hon. Paul E. Davison to conduct all proceedings.  (ECF No. 23).  In May 2023, this action was reassigned to the undersigned.  (ECF 05/23/2023 Notice of Case Reassignment).

Upon completing discovery, the parties cross-moved for summary judgment.  (ECF Nos. 61 to 66, 69 to 75).  In July 2023, the Court ordered Laverty to show cause why the Court has subject matter jurisdiction.[15]  (ECF No. 76).  Upon the Court's satisfaction that it maintained subject matter jurisdiction over the action, the Court granted Laverty leave to amend his complaint to reallege subject matter jurisdiction and the Court denied the parties cross-motions for summary judgment as moot.  (ECF No. 80).  In August 2021, Laverty filed his amended complaint.  (ECF No. 81).

---

[14] The Court does not view whether Laverty had fallen from a ladder as a *genuine* factual dispute.  While the emergency room medical record does not state that Laverty had fallen from a ladder (ECF No. 93-1 at 2), Dobco does not proffer evidence suggesting otherwise.  As for whether Laverty lost consciousness, this fact has more to do with potential damages, which are not the subject of the parties' cross motions for summary judgment.

[15] The Court observed that Laverty had grounded subject matter jurisdiction in diversity of citizenship (ECF Nos. 2, 5, 7), but had not adequately alleged that the amount in controversy had exceeded $75,000.  (ECF No. 76).

About two weeks later, the parties filed their renewed cross-motions for summary judgment.  (ECF Nos. 85 (Laverty's Motion), 89 (Dobco's Motion)).[16]  Laverty moves for summary judgment on his New York Labor Law § 240(1) claim.  (*See* ECF No. 87).  Dobco cross-moves for summary judgment on Laverty's claims under New York Labor Law §§ 200, 240(1), and 241(6).  (*See* ECF No. 91).

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material under Rule 56 where it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[17]  A dispute about a material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*[18]  In determining whether the moving party has met its burden of proving that there are no genuine disputes of material fact, the Court must resolve all ambiguities and draw all factual inferences for the party opposing the motion.  *See Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023).  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).[19]

"When the nonmoving party bears the burden of proof at trial, summary judgment is

---

[16] Both parties filed S.D.N.Y. Local Rule 56.1 Statements of Material Facts (ECF Nos. 88 (Laverty's Rule 56.1 Statement), 90 (Dobco's Rule 56.1 Statement)), and Counterstatements of Material Facts (ECF Nos. 94 (Laverty's Rule 56.1 Counterstatement), 96 (Dobco's Rule 56.1 Counterstatement)), Memoranda of Law (ECF Nos. 87 (Laverty's Mem.), 91 (Dobco's Mem.)), Oppositions (ECF Nos. 92 (Laverty's Opp.), 93 (Dobco's Opp.)), and Replies (ECF Nos. 97 (Laverty's Reply), 98 (Dobco's Reply)).

[17] *See also Red Tree Invs., LLC v. Petróleos de Venez., S.A.*, 82 F.4th 161, 170 (2d Cir. 2023).

[18] *See also Red Tree Invs.*, 82 F.4th at 170.

[19] *See also Wiggins v. Griffin*, 86 F.4th 987, 995 (2d Cir. 2023).

warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration and internal quotation marks omitted).  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996).  Yet summary judgment must be denied if the Court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  Summary judgment is also appropriate when the movant submits undisputed evidence "that negates an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

## IV.   DISCUSSION

### A.  N.Y. Lab. Law § 240(1) Claim

Laverty moves for summary judgment on his New York Labor Law § 240(1) claim, arguing that Dobco failed, as a matter of law, to provide him with an adequate safety device to protect him from the inherent, elevation-related hazards of demolishing an overhead pipe while standing on an A-frame ladder.  (ECF No. 87 at 1–7).  Dobco cross-moves for summary judgment on this same claim, arguing that there is no genuine dispute of material fact that an adequate safety device, a Bobcat, was furnished to Laverty to steady and lower overhead pipes, and that Laverty was the proximate cause of his injury by failing to use it.  (ECF No. 91 at 3–8).

New York Labor Law § 240(1),[20] "commonly known as the 'scaffold law,' imposes strict liability on contractors and building owners for failure to provide adequate protection to workers from certain elevation-related hazards." *Steinman v. Morton, Int'l, Inc.*, 519 F. App'x 48, 50 (2d Cir. 2013) (Summary Order); *see also Runner v. N.Y. Stock Exch., Inc.*, 13 N.Y.3d 599, 603 (2009) ("[T]he purpose of the strict liability statute is to protect construction workers . . . from the pronounced risks arising from construction work site elevation differentials . . . ."). "Liability under § 240(1) is limited to accidents related to the inherent effects of gravity." *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 302 (2d Cir. 2009).[21]  Liability "arises when 'the harm that causes an injury flows directly from the application of the force of gravity to the object,' and does not require either a 'falling worker' or a 'falling object.'" *Runner v. N.Y. Stock Exch., Inc.*, 590 F.3d 904, 905 (2d Cir. 2010) (alteration omitted) (quoting *Runner*, 13 N.Y.3d at 604).  Liability is "not predicated on fault: it is imputed to the owner or contractor by statute and attaches irrespective of whether due care was exercised and without reference to principles of negligence." *Gen. Star Nat'l Ins. v. Universal Fabricators, Inc.*, 585 F.3d 662, 672 (2d Cir. 2009).[22]

"To establish liability under the statute, a plaintiff must show: (1) the existence of an elevation-related hazard of the type encompassed by the statute; and (2) an injury proximately caused by the absence of proper protection from the hazard." *Steinman*, 519 F. App'x at 50.[23]

---

[20] New York Labor Law § 240(1) provides as follows.  "All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."  N.Y. Lab. Law § 240(1).

[21] *See also Runner*, 13 N.Y.3d at 604 (explaining that § 240(1) "was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from *harm directly flowing from the application of the force of gravity to an object or person*").

[22] *See also Brown v. Two Exch. Plaza Partners*, 76 N.Y.2d 172, 179 (1990).

[23] *See also Wilinski v. 334 E. 92nd Hous. Dev. Fund Corp.*, 18 N.Y.3d 1, 7 (2011).

"The burden of showing that an elevation-related risk exists, and that the owner or contractor did not provide adequate safety devices falls upon the plaintiff." *Walter v. CSX Transp. Inc.*, No. 22-1254, 2023 WL 4044113, at *1 (2d Cir. June 16, 2023) (Summary Order).[24] "Although liability is absolute, the plaintiff has the burden of showing causation." *Vasquez*, 582 F.3d at 302.[25]

"The failure to provide safety devices constitutes a per se violation of the statute and subjects owners and contractors to absolute liability, as a matter of law, for any injuries that result from such failure." *Lewis v. Lendlease (US) Constr. LMB, Inc.*, No. 18-cv-8662, 2021 WL 5762419, *4 (S.D.N.Y. Dec. 2, 2021) (quoting *Cherry v. Time Warner, Inc.*, 66 A.D.3d 233, 235 (1st Dep't 2009)). Thus, "a contractor will be held liable so long as the violation of the statute was the proximate cause of the worker's injuries." *Krafcsik v. Egnatia Constr., Inc.*, No. 19-cv-5376, 2021 WL 4198218, at *2 (S.D.N.Y. Sept. 14, 2021) (internal quotation marks omitted).[26] "[A] plaintiff establishes proximate cause by showing that this violation was a contributing cause of his fall." *Id.* (internal quotation marks omitted).[27] "The legislature's intent was to protect workers by placing ultimate responsibility for construction safety practices on the owner and general contractor instead of on workers, so any negligence by the injured worker is immaterial." *Corrales-Patino v. Procida Constr. Corp.*, No. 19-cv-5579, 2021 WL 5331528, at *6 (S.D.N.Y. Nov. 15, 2021).[28] Thus, "a plaintiff's contributory negligence will not absolve a defendant of liability" under § 240(1). *Lewis*, 2021 WL 5762419, at *5.[29]

Here, the Court cannot grant summary judgment to either party on Laverty's § 240(1) claim because there are several disputes of material fact that must be resolved by a jury.

---

[24] *See also Broggy v. Rockefeller Grp., Inc.*, 8 N.Y.3d 675, 681 (2007).

[25] *See also Blake v. Neighborhood Hous. Servs. of N.Y.C., Inc.*, 1 N.Y.3d 280, 287–89 (2003).

[26] *See also Wilson v. City of New York*, 89 F.3d 32, 36 (2d Cir. 1996); *Blake*, 1 N.Y.3d at 287.

[27] *See also Blake*, 1 N.Y.3d at 287.

[28] *See also Rocovich v. Consol. Edison Co.*, 78 N.Y.2d 509, 513 (1991) ("Negligence, if any, of the injured worker is of no consequence.").

[29] *See also Rocovich*, 78 N.Y.2d at 513.

Although Laverty adequately established "the existence of an elevation-related hazard of the type encompassed by" § 240(1), there are genuine disputes of material fact about whether Laverty's injury was "proximately caused by the absence of proper protection from the hazard." *Steinman*, 519 F. App'x at 50.

First, the parties have raised genuine disputes of material fact about whether Dobco provided "adequate protection" to Laverty by making Bobcats available to steady and lower overhead pipes during cutting. Laverty argues that Dobco failed to provide adequate protection because the unsecured A-Frame ladder he was standing on failed to keep him from falling when it was struck by an overhead pipe he was cutting. (ECF No. 87 at 2–7). Dobco counters that it did provide adequate protection by making Bobcats available for steadying and lowering overhead pipes during cutting. (ECF Nos. 91 at 3–7; 93 at 3–7). In response, Laverty argues that a Bobcat cannot be an adequate safety device as a matter of law,[30] which if true would constitute a "per se violation of the statute" and would subject Dobco "to absolute liability, as a matter of law, for any injuries that result[ed] from such failure." *Lewis*, 2021 WL 5762419, *4.[31] But Laverty provides no support for his argument that a Bobcat cannot be an adequate safety device as a matter of law. (*See* ECF Nos. 92 at 3; 97 at 3). Further, "the issue of whether a particular safety device provided proper protection is generally a question of fact for the jury." *Alava v. City of New York*, 246 A.D.2d 614, 615 (2d Dep't 1998).[32] Here, the parties' experts disagree about whether a Bobcat can be considered an adequate safety device. Laverty's expert, John Coniglio, testified that he believed the use of a Bobcat to hold up a pipe was "unsafe," and he had "never seen a Bobcat used to elevate and hold something in position."

---

[30] *See* ECF Nos. 92 at 3 ("Nor is the bobcat a safety device enumerated in the statute."); 94 at 3 ("Plaintiff's expert opines that the bobcat is not a safety device . . . .").

[31] *Accord Auriemma v. Biltmore Theatre, LLC*, 82 A.D.3d 1, 8 (1st Dep't 2011).

[32] *See also Medina-Arana v. Henry St. Prop. Holdings, LLC*, 186 A.D.3d 1666, 1667 (2d Dep't 2020).

(ECF No. 94-2 at 48–50). Dobco's expert, Steven DiBartolo, asserted in his expert report that the "proper equipment necessary for the safe removal of the pipe was the Bobcat(s) that was available to Mr. Laverty" and that the "Bobcat was the most appropriate equipment for the work task." (ECF No. 91-25 at 10). While "summary judgment is not *per se* precluded because there are conflicting experts," "where, as here, there are conflicting expert [opinions] presented, courts are wary of granting summary judgment." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) (alteration omitted). Thus, the Court cannot conclude, as a matter of law, whether a Bobcat is an adequate safety device. *Alava*, 246 A.D.2d at 615. Rather, this question is one of fact that must be submitted to a jury. *Id.*

Second, the parties have raised genuine disputes of material fact about the "proximate cause" of Laverty's injury. According to Dobco, Laverty failed to request assistance from a Bobcat operator to support and lower pipes during cutting, which was the sole proximate cause of his injury and made him a "recalcitrant worker."[33] (ECF Nos. 91 at 3–7; 93 at 3–7). "[A] defendant will not be held liable if the plaintiff is the sole proximate cause of his injury." *Lewis*, 2021 WL 5762419, at *5 (internal quotation marks omitted).[34] "Under the so-called recalcitrant worker defense, a defendant can show that plaintiff was the sole proximate cause of his injuries by establishing that that plaintiff refused to use the available, safe, and appropriate equipment." *De Jesus v. Akam Assocs., Inc.*, No. 09-cv-4450, 2012 WL 3641021, at *4 (S.D.N.Y. Aug. 23,

---

[33] In response, Laverty argues that as a matter of law, his failure to request assistance from a Bobcat operator could not make him the sole proximate cause for his fall because a coworker is not a safety device. (ECF No. 87 at 3). Laverty is correct that a coworker is not a "safety device" contemplated by the statute. *See Melendez v. 1595 Broadway LLC*, 214 A.D.3d 600, 601–02 (1st Dep't 2023) ("Plaintiff's failure to ask his coworkers to hold the ladder while he worked also did not constitute the sole proximate cause of the accident, since a coworker is not a safety device contemplated by the statute."); *Rodriguez v. BSREP UA Heritage LLC*, 181 A.D.3d 537, 538 (1st Dep't 2020). But a Bobcat is a "device," even though operated by a person. And the question of whether a Bobcat is an "adequate" safety device is one for a jury to decide. *Alava*, 246 A.D.2d at 615.

[34] *See also Cahill v. Triborough Bridge & Tunnel Auth.*, 4 N.Y.3d 35, 40 (2004) ("[E]ven when a worker is not recalcitrant there can be no liability under section 240(1) when there is no violation and the worker's actions (here, his negligence) are the sole proximate cause of the accident.") (alterations and internal quotation marks omitted).

2012) (internal quotation marks omitted).[35]  "[T]o establish that a plaintiff was the sole proximate cause of his injuries, a defendant must show that the plaintiff had adequate safety devices available; that he knew both that they were available and that he was expected to use them; that he chose for no good reason not to do so; and that had he not made that choice he would not have been injured."  *Krafcsik*, 2021 WL 4198218, at *3 (internal quotation marks omitted).[36]  Even so, "if a statutory violation is a proximate cause of an injury, the plaintiff cannot be solely to blame for it."  *Id.*[37]

Dobco's recalcitrant worker defense raises several disputes of material fact, including whether Laverty knew that Bobcats were available to him and whether he knew he was expected to use them.  According to Dobco, Laverty knew that there were always two or three Bobcats available in the Bradley basement for Laverty's use to support and lower pipes.  (ECF Nos. 90 at ¶¶ 33, 35, 37; 91 at 3–7; 93 at 3–7).  Laverty does not appear to dispute that he knew that the Bobcats were present in the basement because he acknowledges that once, Sasso, who was operating a Bobcat, helped him lower a 500-pound valve.  (ECF No. 94 at 2–5).  But Laverty appears to dispute whether he knew that the Bobcats were available to him for lowering pipes because he "never utilized or asked for a bobcat to support [a] pipe that was being cut," nor had he been instructed or told to use one for that purpose.  (*See id.*).

Additionally, the parties dispute the extent of Stojanovic's instructions.  According to Laverty, Stojanovic did not provide "specific instructions on how to accomplish his job."  (ECF No. 88 at ¶45).  Yet Dobco asserts that Stojanovic provided "specific instructions," including "the proper means and methods of performing" work safely and reminded Laverty "of procedure,

---

[35] *See also Cahill*, 4 N.Y.3d at 39–40.
[36] *See also Cahill*, 4 N.Y.3d at 40.
[37] *See also Blake*, 1 N.Y.3d at 290.

of the availability of equipment, of the availability of additional help, and to not rush." (ECF Nos. 90 at ¶35; 96 at ¶45). Further, Stojanovic testified that he had never witnessed Laverty cutting an elevated pipe and allowing it to free fall and that he would have stopped Laverty from doing so if he had seen the same. (ECF No. 90 at ¶ 36). Laverty, by contrast, testified that he engaged in such a practice with all ceiling pipe demolition (ECF No. 88 at ¶¶ 20–22, 34–35), which suggests that there is a dispute of material about whether Laverty knew that he was expected to use a Bobcat to support and lower pipes rather than allowing pipes to free fall.

Finally, it is also disputed whether Laverty, for no good reason, chose not to use a Bobcat. Laverty argues that because he was never told that he was required or expected to use a Bobcat, he cannot be said to have deliberately refused to use an available safety device. (ECF No. 92 at 3–4). But whether Laverty deliberately refused to use an available safety device appears to be a question of fact, rather than one of law, that would best be resolved by a jury.

In summary, both parties' motions for summary judgment as to Laverty's § 240(1) claim raise disputed issues of material fact that preclude summary judgment.

**B. N.Y. Lab. Law § 241(6) Claim**

Dobco also moves for summary judgment on Laverty's New York Labor Law § 241(6) claim, arguing that a violation of § 241(6) requires a violation of a provision of the New York Department of Labor Industrial Code and there was no such violation here. (ECF No. 91 at 8– 14).

New York Labor Law § 241(6) requires that all contractors and owners and their agents provide "'reasonable and adequate protection and safety' in 'areas in which construction, excavation or demolition work is being performed.'" *Walter*, 2023 WL 4044113, at *2 (quoting N.Y. Lab. Law § 241(6)). "To establish liability under this section, the plaintiff must allege a

violation of at least one of the implementing regulations set forth by the Commissioner of the Department of Labor."  *Id.*  Here, Laverty identifies violations of two provisions of the New York Department of Labor Industrial Code.[38]  (ECF No. 92 at 9–12).

First, Laverty argues that Dobco violated N.Y. Comp. Codes R. & Regs. tit. 12, § 23-1.25(d) (*id.* at 9–11), which provides that "[a]ll persons engaged in welding or flame-cutting operations shall be provided where necessary with proper scaffolds installed and used in compliance with this Part (rule)."  N.Y. Comp. Codes R. & Regs. tit. 12, § 23-1.25(d).  Laverty argues that § 23-1.25(d) applies because he was engaged in flame-cutting operations and was not provided with proper scaffolds.  (ECF No. 92 at 9–10).  Dobco argues that § 23-1.25(d) is too general to give rise to a triable claim for damages under § 241(6) as a matter of law.  (ECF No. 91 at 10–11).

The Court agrees with Dobco.  The New York Court of Appeals has drawn a distinction "between provisions of the Industrial Code mandating compliance with concrete specifications and those that establish general safety standards."  *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 505 (1993).  "The former give rise to a nondelegable duty, while the latter do not."  *Id.*  To give rise to liability under § 241(6), the Industrial Code provision must contain a

---

[38] Laverty's Amended Complaint did not identify any New York Department of Labor regulations or allege a violation of a New York Department of Labor regulation.  (*See* ECF No. 81).  Relying on Second Department precedent, Laverty argues that his failure to identify a code provision in the pleadings or discovery is not fatal to his § 241(6) claim.  (ECF No. 92 at 11).  *See Przyborowski v. A&M Cook, LLC*, 120 A.D.3d 651, 654 (2d Dep't 2014) ("Although a plaintiff asserting a Labor Law § 241(6) cause of action must allege a violation of a specific and concrete provision of the Industrial Code, the failure to identify the code provision in the complaint or bill of particulars is not fatal to such a claim.") (citations omitted).  The Court is inclined to believe that the need to plead an essential element to a claim is governed by federal procedural law, rather than state law.  However, because the Court concludes that summary judgment is warranted in favor of Dobco on Laverty's § 241(6) claim, the Court will assume, without deciding, that Laverty sufficiently pleaded violations of New York Department of Labor regulations by asserting such violations in his opposition to Dobco's cross-motion for summary judgment.  *See, e.g.*, *Buono v. AvalonBay Cmtys., Inc.*, No. 19-cv-5413, 2021 WL 51524, at *3 (S.D.N.Y. Jan. 6, 2021) (considering allegations of violation of the Industrial Code raised in Plaintiff's opposition on summary judgment); *Kiss v. Clinton Green N., LLC*, No. 17-cv-10029, 2020 WL 4226564, at *6 (S.D.N.Y. July 22, 2020) (granting summary judgment on a § 241(6) claim because Plaintiff's claim did "not identify any specific codes, rules or regulations, nor [did] Plaintiff's memoranda of law in connection with the cross-motions").

"specific, positive command, rather than a reiteration of common-law standards which would merely incorporate into the State Industrial Code a general duty of care." *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 349 (1998) (citations and internal quotation marks omitted). Thus, "whenever the regulations in the Industrial Code employ 'such general terms as *adequate, effective, equal, equivalent, firm, necessary, proper, safe, secure, substantial, sufficient, suitable* and other similar terms to describe required materials, devices, structures, methods and procedures,'" such terms "are not sufficient to give rise to a triable claim for damages under Labor Law § 241(6)." *Ross*, 81 N.Y.2d at 502 (alterations omitted) (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 23-1.4(a)). Here, § 23-1.15(d) uses the words "where *necessary*" and "*proper* scaffolds" in connection with the scaffold requirement. N.Y. Comp. Codes R. & Regs. tit. 12, § 23-1.25(d) (emphasis added). Because the words "where necessary" and "proper" are "general terms" that cannot give rise to a triable claim for damages under § 241(6), *Ross*, 81 N.Y.2d at 503, summary judgment for Dobco is appropriate.

Second, Laverty argues that Dobco violated N.Y. Comp. Codes R. & Regs. tit. 12, § 23-1.21(e)(3), which provides as follows:

> Stepladder footing. Standing stepladders shall be used only on firm, level footings. When work is being performed from a step of a stepladder 10 feet or more above the footing, such stepladder shall be steadied by a person stationed at the foot of the stepladder or such stepladder shall be secured against sway by mechanical means.

N.Y. Comp. Codes R. & Regs. tit. 12, § 23-1.21(e)(3). Laverty argues that because he is six feet tall and he was standing on the fourth rung of a six-foot ladder, he "was doing work 10 feet or more above the footing," making § 23-1.21(e)(3) applicable. (ECF No. 92 at 11). And because there was no person stationed at the foot of the ladder, and there was nothing to secure the ladder against sway, Dobco violated this regulation. (*Id.*).

But § 23-1.21(e)(3) is not applicable here. Industrial Code § 23-1.21(e)(3) applies to

"work [that] is being performed *from* a step of a stepladder 10 feet or more above the footing."

N.Y. Comp. Codes R. & Regs. tit. 12, § 23-1.21(e)(3) (emphasis added).  Here, Laverty was on

the fourth rung of a six-foot-tall ladder, which was less than ten feet above the ground.  Thus,

§ 23-1.21(e)(3) is inapplicable.  *See Vega v. Renaissance 632 Broadway, LLC*, 103 A.D.3d 883,

885 (2d Dep't 2013) ("Here, the plaintiff testified that the ladder was 8 feet in height, and Singh

testified that the ladder was 6 feet in height.  In either case, the regulation [§ 23-1.21(e)(3)] was

inapplicable, as the step the plaintiff was standing on was less than 10 feet above the footing.").

Thus, summary judgment for Dobco on Laverty's § 241(6) claim is warranted.[39]

### C.  N.Y. Lab. Law § 200 and Common-Law Negligence Claim

Dobco also moves for summary judgment on Laverty's claim under New York Labor

Law § 200 and common-law negligence.  Dobco argues that liability under § 200 requires that

the general contractor control the methods and means of the laborer's work, and here, Dobco

only had a right to generally supervise work.  (ECF No. 91 at 14–16).

New York Labor Law § 200 "outlines the general duty of employers to safeguard their

employees' well-being by providing 'reasonable and adequate protection to their lives, health

and safety' in the workplace."[40]  *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 514 (2d Cir. 2022)

(alteration omitted) (quoting N.Y. Lab. Law § 200(1)).  Section 200 "is a codification of the

common-law duty to provide workers with a safe work environment, it essentially codifies a

claim for common law negligence."  *Id.* (internal quotation marks omitted).[41]  Section 200 cases

---

[39] Dobco's memorandum of law also made arguments concerning N.Y. Comp. Codes R. & Regs. tit. 12, § 23-3.3(c), (e).  (ECF No. 91 at 11–14).  Because Plaintiff has expressly withdrawn his claims under those two regulations (ECF No. 94 at 7), the Court does not address them.

[40] New York Labor Law § 200 states: "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places.  All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons."

[41] *See also Jarnutowski v. City of Long Beach*, 210 A.D.3d 881, 883 (2d Dep't 2022).

fall into two categories: (1) those where workers are injured by dangerous or defective premises conditions at a work site, and (2) those involving the manner in which the work is performed. *Krafcsik*, 2021 WL 4198218, at *4.[42]  "[T]he failure to furnish safe scaffolds involves the 'methods and means' of the work." *Id.*[43]  Here, the parties agree that Laverty's § 200 claim arises under the "methods and means" of work category.  (ECF Nos. 91 at 15; 92 at 13).  In such cases, a plaintiff cannot recover against the owner or general contractor, unless they had authority to supervise or control the performance of work.  *Krafcsik*, 2021 WL 4198218, at *4.[44]

"The requirement that an owner or contractor 'exercised some supervisory control over the operation' before it can be held liable in negligence 'is an outgrowth of the basic common-law principle that an owner or general contractor should not be held responsible for the negligent acts of others over whom the owner or general contractor had no direction or control.'"  *Lewis*, 2021 WL 5762419, at *13 (quoting *Ross*, 81 N.Y.2d at 505).  "Under Section 200, there must be evidence that the defendant both 'had control over the methods of the subcontractors and other worksite employees' in the sense that it had the ability to take action to prevent the danger that led to the plaintiff's injury and that 'defendant knew or should have known of the danger to plaintiff.'"  *Id.* (quoting *Rizzuto*, 91 N.Y.2d at 353).  "Put otherwise, where 'plaintiff's claim appears to arise from an alleged defect in the "methods or materials" utilized by his employer,' the plaintiff must show that 'the general contractor exercised the requisite degree of supervision and control over the portion of the work that led to plaintiff's injury.'"  *Id.* (alterations omitted) (quoting *Ross*, 81 N.Y.2d at 506).  "It is not enough that the contractor 'undertook to "supervise"

---

[42] *See also Walsh v. Kenny*, 219 A.D.3d 1555, 1557 (2d Dep't 2023).

[43] *See also Ortega v. Puccia*, 57 A.D.3d 54, 62 (2d Dep't 2008).

[44] *See also Rizzuto*, 91 N.Y.2d at 352.  Some courts "appear to require the actual exercise of supervision or control before liability may attach."  *Ortega*, 57 A.D.3d at 62 n.2.  However, such a standard would "encourage defendants to purposefully absent themselves from worksites to provide insulation from liability."  *Id.*  Instead, the Court looks to "whether the defendant had the authority to supervise or control the work."  *Id.*

the construction work and, further, to comply with the legal standards governing the safety of all employees on the site, including those of its subcontractors.'" *Id.* (quoting *Ross*, 81 N.Y.2d at 506). "The retention of the right to generally supervise the work, to stop the contractor's work if a safety violation is noted, or to ensure compliance with safety regulations does not amount to the supervision and control of the work site necessary to impose liability on an owner or general contractor pursuant to [N.Y. Lab. Law] § 200." *Id.*[45]

Dobco argues that it had no control over the methods and means of Laverty's work. (ECF No. 91 at 15). Dobco explains that Laverty was employed by J&R, who was Dobco's subcontractor, and that J&R supervised Laverty. (*Id.*). Also, J&R provided all equipment that Laverty used as well as the instructions on how Laverty was to accomplish his job. (*Id.*). Thus, according to Dobco, it had no control over the methods and means of Laverty's work. Rather, Dobco only maintained the right to generally supervise the work. (*Id.* at 15–16).

Laverty argues that Dobco had two individuals serving as its agent for site safety supervision: Reilly and Angela Lumbrazo. (ECF No. 92 at 14). Laverty explains that Reilly testified that the means of performing Laverty's work—torch-cutting overhead pipes while standing on a ladder—was not safe, and that she preferred the work to be done from a scaffold, rather than a ladder. (*Id.*; *see* ECF No. 91-22 at 68–71). Reilly was also authorized to stop work if she believed workers were working in an unsafe manner. (ECF No. 92 at 14–15). Thus, according to Laverty, Dobco controlled the methods and means of his work. (*Id.*).

In response, Dobco argues that Reilly was employed by Dannick, who was Dobco's safety subcontractor. (ECF No. 98 at 7). Dobco acknowledges that it employed Lumbrazo and that both Reilly and Lumbrazo were allowed to stop work as part of enforcing safety protocols.

---

[45] *See also Griffin v. Clinton Green S., LLC*, 98 A.D.3d 41, 48–49 (1st Dep't 2012); *Dennis v. City of New York*, 304 A.D.2d 611, 612 (2d Dep't 2003).

(*Id.*).  But Dobco reiterates that it only maintained the right to generally supervise the work—by stopping a subcontractor's work if a safety violation was noted and ensuring compliance with safety regulations.  (*Id.*).  Dobco thus argues that its general supervision could not impose liability under § 200.  (*Id.*).

The Court agrees that Dobco's (or Reilly's) mere authority to halt work over a safety concern cannot establish that Dobco had more than general authority over Laverty's work.  *See Csikos v. S.M. Constr. Contracting, Inc.*, No. 18-cv-9598, 2021 WL 5771921, at *3 (S.D.N.Y. Dec. 3, 2021) ("Plaintiff points to Mr. Anzelde's acknowledgment that he had the authority to halt work. . . . But those facts are not enough to show that Defendant had anything more than general supervisory authority over Plaintiff's work."); *Hughes v. Tishman Constr. Corp.*, 40 A.D.3d 305, 309 (1st Dep't 2007) ("That Tishman, Site Safety, or both, may have had the authority to stop work for safety reasons is insufficient to raise a triable issue of fact with respect to whether Tishman exercised the requisite degree of supervision and control over the work being performed to sustain a claim under [N.Y.] Labor Law § 200 or for common-law negligence.").[46]  Rather, "liability under [N.Y.] Labor Law § 200 or for common-law negligence may only be imposed on a general contractor or construction manager who controls the manner in which the plaintiff performed his or her work."  *Hughes*, 40 A.D.3d at 309; *accord Vasquez*, 582 F.3d at 301.  Here, Laverty failed to proffer sufficient evidence to raise a triable issue about whether Dobco exercised supervisory control over the manner in which he performed his work. At most, Laverty cites evidence that Dobco, through Reilly, maintained general supervisory

---

[46] *See also Villanueva v. 114 Fifth Ave. Assoc. LLC*, 162 A.D.3d 404, 406 (1st Dep't 2018) ("Although Structure Tone had the authority to stop work at the construction site for safety reasons, this is insufficient to raise a triable issue of fact with respect to whether Structure Tone exercised the requisite degree of supervision and control over the work being performed to sustain a claim under [N.Y.] Labor Law § 200 or for common-law negligence.") (alteration and internal quotation marks omitted).

authority to halt work over safety concerns and that Reilly sometimes did exercise that authority.[47]  But that general supervisory authority is not enough to support liability under § 200 nor is it sufficient to raise a triable issue of fact.  *Vasquez*, 582 F.3d at 301; *Hughes*, 40 A.D.3d at 309.[48]

Accordingly, summary judgment for Dobco on Laverty's N.Y. Labor Law § 200 and common-law negligence claims are warranted.

## V.     CONCLUSION

For the reasons above, Laverty's motion is **DENIED** in its entirety and Dobco's motion is **GRANTED** in part and **DENIED** in part.  In sum, (1) Laverty's motion for summary judgment on the issue of liability under New York Labor Law § 240(1) is **DENIED**; (2) Dobco's cross-motion for summary judgment on the issue of liability on the N.Y. Labor Law § 240(1) claim is **DENIED**; (3) Dobco's motion for summary judgment on the N.Y. Labor Law § 241(6)

---

[47] Although Reilly thought that the means of performing Laverty's work was unsafe and that she preferred the work to be done from a scaffold, rather than a ladder, Laverty points to no evidence revealing that Reilly was authorized to direct Laverty to work from a scaffold instead of a ladder.  Rather, the evidence only supports the conclusion that Reilly had a general authority to halt work over safety concerns, which she sometimes did exercise.

[48] *Corrales-Patino*, 2021 WL 5331528, at *9 ("The fact that the general contractors had employees present with authority to stop unsafe work and hired Site Safety LLC to oversee worksite safety is not sufficient to demonstrate actual supervisory control."); *Maher v. City of New York*, 09-cv-2679, 2012 WL 113559, at *4 (E.D.N.Y. Jan. 13, 2012) ("[A]bsent any showing that defendants supervised or controlled [plaintiff's] work on the project, their authority to set the applicable safety standard is insufficient to render them liable under § 200."); *Bonocore v. Vornado Realty Tr.*, No. 05-cv-6422, 2009 WL 691933, at *5–6 (S.D.N.Y. Mar. 13, 2009); *Kauffman v. Turner Constr. Co.*, 195 A.D.3d 1003, 1006 (2d Dep't 2021) ("General supervisory authority at a work site, the right to stop a contractor's work if a safety violation is observed, or the authority to ensure compliance with safety regulations or the terms of a contract is insufficient to impose liability under [N.Y] Labor Law § 200."); *Villanueva*, 162 A.D.3d at 406; *Fiorentino v. Atlas Park LLC*, 95 A.D.3d 424, 426 (1st Dep't 2012) ("[T]hat Plaza or its site safety inspector had the authority to stop the work if he observed a subcontractor engaging in an unsafe activity is insufficient to establish the requisite supervision or control."); *Martinez v. 342 Prop. LLC*, 89 A.D.3d 468, 469 (1st Dep't 2011) ("Site Safety advised Flintlock on safety matters and, at most, had the authority to stop unsafe work practices. Under these circumstances, Site Safety lacked the control over the conduct of work at the project necessary to impose liability upon it under [N.Y.] Labor Law § 200 or common-law negligence."); *Foley v. Consol. Edison Co.*, 84 A.D.3d 476, 478 (1st Dep't 2011); *Geonie v. OD & P NY Ltd.*, 50 A.D.3d 444, 445 (1st Dep't 2008) ("The [N.Y.] Labor Law § 200 and common-law negligence claims were properly dismissed as against the general contractor, OD & P, because the evidence that OD & P's project superintendent coordinated the work of the trades, conducted weekly safety meetings with subcontractors, conducted regular walk-throughs, and had the authority to stop the work if he observed an unsafe condition is insufficient to raise a triable issue whether OD & P exercised the requisite degree of supervision and control over the work to sustain those claim.").

claim is **GRANTED** and the claim is **DISMISSED**; and (4) Dobco's motion for summary judgment on the N.Y. Labor Law § 200 and common-law negligence claims is **GRANTED** and the claim is **DISMISSED**.  One claim survives: Laverty's § 240(1) claim under New York Labor Law.

The Clerk of Court is respectfully directed to terminate the pending motions at ECF Nos. 85, 89.

Finally, the Court has scheduled a Pretrial Conference on **April 11, 2024**, at **11:00 AM**, **in person**, before Magistrate Judge Victoria Reznik, at the Hon. Charles L. Brieant, Jr., Courthouse, 300 Quarropas Street, Courtroom 420, White Plains, New York 10601.

**SO ORDERED.**

DATED:      White Plains, New York
            March 6, 2024

_____
VICTORIA REZNIK
United States Magistrate Judge